BHP, INC.,
*d/b/a Global Power Components*,

                    Plaintiff,

                                        Case No. 25-cv-576-pp
                                        Case No. 25-cv-985-pp

        v.

DAVID ACKERMAN, *et al.*,

                    Defendants.

## ORDER DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE (DKT. NO. 97), GRANTING DEFENDANTS DAVID ACKERMAN AND PAUL SNITKER'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 26) AND DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE A MOTION FOR MORE DEFINITE STATEMENT (DKT. NO. 99)

Defendants David Ackerman and Paul Snitker filed a motion for a protective order to vacate or quash the plaintiff's sixteen third-party subpoenas. Dkt. No. 26. After the defendants had filed their reply in support of the motion, dkt. no. 93, the plaintiff filed a motion to strike their reply brief or for leave to file a sur-reply, dkt. no. 97. And all the defendants except Freightbase LLC have filed a Civil L.R. 7(h) expedited, non-dispositive motion for leave to file a motion asking the court to hold in abeyance "all other pre-answer motions to dismiss and answer deadlines" until they can file "a single, consolidated motion for a more definite statement." Dkt. No. 99 at 1.

The court will grant the defendants' motion for a protective order and deny the motion for leave to file a motion for more definite statement.

1

## I.    Background

In its order consolidating these two cases, the court recounted in detail the procedural history of both. Dkt. No. 35. In summary: On April 15, 2025, the plaintiff filed its initial case against David Ackerman and Paul Snitker in Milwaukee County Circuit Court. Dkt. No. 1-2. The complaint alleged that Ackerman and Snitker were subject to restrictive covenant agreements prohibiting them from competing with the plaintiff or soliciting the plaintiff's employees or customers for a period during and after their employment. Id. at ¶¶31–50, 64–84. The plaintiff alleged that Ackerman and Snitker breached these agreements by forming a competing business—Gridcrest Solutions, LLC—and that they diverted business opportunities from the plaintiff to Gridcrest for their own gain. Id. at ¶169

Ackerman and Snitker removed the case to this federal court. Dkt. No. 1. The plaintiff subsequently filed an amended complaint. Dkt. No. 11. Ackerman and Snitker answered the amended complaint and brought counterclaims against the plaintiff. Dkt. Nos. 12, 13. The plaintiff then moved to dismiss some of the counterclaims. Dkt. Nos. 18, 20. On July 26, 2025, Ackerman and Snitker filed the instant motion for a protective order vacating or quashing sixteen third-party subpoenas the plaintiff had served that allegedly sought "the production of a broad range of business and personal financial records of Defendants, Defendants' spouses, and Gridcrest." Dkt. No. 26 at 2.

Meanwhile, a parallel case against Gridcrest and Ackerman's and Snitker's spouses, DeeCee Ackerman and Sarah Snitker,[1] was proceeding in Texas. Case No. 25-cv-985, Dkt. No. 1. That complaint alleged that DeeCee and

---

[1] To avoid confusion between the two Ackermans and the two Snitkers, the court will refer to the spouses as DeeCee and Sarah.

Sarah had formed Gridcrest on behalf of their spouses—who actually control Gridcrest's operations. Id. at ¶¶66, 71. That case was transferred to this court on July 9, 2025, with two partially briefed motions to dismiss pending. Case No. 25-cv-985, Dkt. Nos. 34, 35, 41. After the case was transferred, DeeCee, Sarah and Gridcrest filed another motion to dismiss for lack of jurisdiction. Case No. 25-cv-985, Dkt. No. 48.

On July 28, 2025, this court set a status conference in both cases and stayed all pending briefing deadlines. Dkt. No. 49. At the status conference, the plaintiff argued that the court should consolidate the cases and allow the plaintiff to file a global amended complaint. See Dkt. Nos. 52, 54. The defendants' counsel inquired about the status of Ackerman's and Snitker's motion for a protective order. Id. The court responded that it had stayed the proceedings pending the outcome of the status conference and reiterated that its order staying the briefing deadlines also should have the effect of staying discovery. Id. To avoid confusion, the court ordered that all discovery was stayed pending further order of the court. Id.

On August 29, 2025, the court issued an order consolidating the two cases and setting a deadline for the plaintiff to file an amended complaint. Dkt. No. 35. On October 3, 2025, the plaintiff filed a second amended complaint adding sixteen defendants and many new claims. Dkt. No. 38. The court denied all pending motions to dismiss as moot, ordered the defendants to respond to the second amended complaint and ordered the plaintiff to file a response to Ackerman's and Snitker's motion for a protective order, stating whether the plaintiff had withdrawn the pending sixteen third-party subpoenas or continued to oppose the motion for a protective order. Dkt. No. 39. The plaintiff filed a response brief, advising the court that it continued to oppose the

3

motion. Dkt. No. 80. After Ackerman and Snitker filed their reply brief in support of the motion for protective order, the plaintiff filed a motion to strike that reply brief or for leave to file a sur-reply. Dkt. No. 97. Ackerman and Snitker responded that they did not object to the plaintiff filing a sur-reply brief, dkt. no. 103, so the court granted the plaintiff's motion to the extent that it allowed the plaintiff to file a sur-reply, dkt. no. 107.

Meanwhile, all of the defendants except Freightbase filed a motion for leave to file a joint motion for more definite statement; they asked the court to "hold[] in abeyance, without waiver, the deadlines for any other answer or pre-answer motions to dismiss pending the Court's ruling." Dkt. No. 99 at 4. (This despite the fact that the court reiterated at the July 28, 2025 hearing that *all* discovery is stayed pending further order of the court, dkt. no. 92, and has stayed the responsive pleading deadline for all defendants until resolution of the pending motions, dkt. no. 102.)

## II.     Ackerman's and Snitker's Motion for Protective Order (Dkt. No. 26)

The court first addresses a procedural issue. As explained, the plaintiff has filed a motion to strike or disregard portions of Ackerman's and Snitker's reply in support of their motion for protective order, or in the alternative, to file a sur-reply. Dkt. No. 97. Ackerman and Snitker have advised the court that they did not oppose the plaintiff's request to file a sur-reply. Dkt. No. 103. The court has granted the plaintiff leave to file a sur-reply. Dkt. No. 107. Because the court granted the plaintiff's request for alternative relief, it will deny as moot the motion to strike.

### A.     Parties' Arguments

Ackerman and Snitker argued that the court should vacate or quash the plaintiff's third-party subpoenas to sixteen recipients, nine of whom now are

4

defendants in the case. Dkt. No. 26 at 1. Ackerman and Snitker argued that the court should vacate or stay the subpoenas until the court had decided the (then-pending) motions to dismiss filed in the Texas case (Case No. 25-cv-985) against DeeCee, Sarah and Gridcrest. Id. at 2–3. They argued that the plaintiff is using this case to improperly obtain discovery against DeeCee, Sarah and Gridcrest without first requesting it from those parties. Id. at 3.

Ackerman and Snitker argued that the court should issue a protective order because the subpoenas are unduly burdensome and embarrassing. Id. They asserted that the subpoenas were sent to Gridcrest's customers, manufacturers and vendors, as well to as banks and accountants of Gridcrest, DeeCee and Sarah. Id. Ackerman and Snitker contended that the plaintiff could have requested much of this information from them, DeeCee, Sarah or Gridcrest directly, but that instead the plaintiff sent the subpoenas "to cause Defendants in this case the most embarrassment possible while forcing their wives, businesses, and those with they have relationships the most undue burden and expense possible." Id. They argued that answering the subpoenas will cause the third parties significant time and expense. Id. at 4. They asserted that a protective order is particularly necessary for the subpoenas to Horizon Bank, Frost Bank and the two accounting firms because those subpoenas seek to compel those third parties to disclose the defendants' personal financial information. Id.

Ackerman and Snitker argued there are grounds to quash the subpoenas to prevent interference with their business relationships with Engineered Software Products, Verde Power Sales, JST Power Equipment and HV Sales Co. Id. They contended that the plaintiff is attempting to "sour[]" their business' relationships with these third parties by issuing burdensome subpoenas. Id.

5

Ackerman and Snitker argued that the court also should quash the subpoenas to the banks and accounting firms to protect the disclosure of personal financial and tax information. Id.

The plaintiff responded that the court should deny Ackerman's and Snitker's motion for both substantive and procedural reasons. Dkt. No. 80 at 1–2. The plaintiff stated that it began serving third-party subpoenas in early July 2025, after the parties' June 2025 Rule 26(f) conference. Id. at 3. The plaintiff explained that on July 15, 2025, the parties met to discuss scheduling and the possible consolidation of the two cases. Id. at 4. According to the plaintiff, during that meeting Ackerman and Snitker did not object to the subpoenas, but that evening sent an email asking the plaintiff to meet and confer the following day (July 16) about a motion for protective order. Id. at 5. The plaintiff stated that it told Ackerman and Snitker that it was available on July 17 for a meet-and-confer. Id. The plaintiff stated that on July 16, Ackerman and Snitker responded that they needed to file their motion that day and again asked if the plaintiff could meet and confer or if they could simply "mark [plaintiff] down as opposed." Id. The plaintiff stated that Ackerman and Snitker filed their motion on the evening of July 16, without meeting and conferring. Id. at 6.

The plaintiff argued that Ackerman and Snitker had failed to allege that any specific subpoena requests are embarrassing or burdensome. Id. at 7. It contended that the court has issued a protective order governing the disclosure of confidential information that will protect Ackerman's and Snitker's financial information. Id. at 8. The plaintiff argued that "embarrassment" can justify a protective order only where "the embarrassment will be particularly serious." Id. (quoting Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 546 (N.D. Ind.

6

1991)). The plaintiff asserted that seeking relevant documents from third parties with whom Ackerman and Snitker did business is "standard, routine, and appropriate discovery." Id. at 9. It argued that the documents requested "trace the flow of millions of dollars in kickbacks and diverted payments from [plaintiff]'s vendors and customers through Gridcrest to Defendants and their spouses." Id.

The plaintiff argued that Ackerman and Snitker raise an undue burden objection on a third party's behalf absent any personal right or privilege in the documents requested. Id. The plaintiff contended that none of the recipients have objected to the subpoenas, and that several already have produced documents, suggesting that there is no undue burden imposed. Id. at 10.

The plaintiff argued that there is no reason to quash the subpoenas pending the resolution of the motions to dismiss because the court has denied those motions as moot. Id. It argued there is no reason to continue the discovery stay based on the "speculative possibility" that the defendants will file new motions to dismiss. Id. at 11.

The plaintiff argued that Ackerman and Snitker have not identified any privilege or privacy interest justifying an order quashing the subpoenas. Id. at 12. It argued that unspecified interference with business relationships does not meet this standard. Id. The plaintiff asserted that it can obtain some of these documents only from third parties because the subpoenas seek third parties' internal communications that Ackerman and Snitker would not possess. Id. at 13.

The plaintiff next argued that Ackerman and Snitker failed to meet and confer with it prior to filing this motion, in violation of the federal and local rules. Id. It argued that Ackerman and Snitker made no good faith effort to

7

meet and confer about the motion and filed it only to delay the plaintiff's discovery efforts. Id. at 14. The plaintiff contended that it is entitled to the expenses it incurred responding the motion because Ackerman and Snitker filed it without substantial justification. Id. The plaintiff reiterated that the court should lift the stay on discovery because "[t]he contours of this case are now well-defined, and continued delay would unfairly prejudice [plaintiff] and reward Defendants' obstruction." Id. at 14–15.

Ackerman and Snitker replied that the plaintiff has issued burdensome discovery to harass them. Dkt. No. 93 at 2. They stated that two days after they filed this motion, the plaintiff served seventy-two and seventy-three requests for production on Ackerman and Snitker respectively, before issuing even more non-party subpoenas on July 24, 2025. Id. at 3. They stated that the plaintiff had issued three more subpoenas to DeeCee, Sarah and Gridcrest on August 8, 2025, despite the court's July 28, 2025 order staying all briefing deadlines and setting a status conference—which the court later stated "should also have had the effect of staying discovery." Id. at 3–4 (quoting Dkt. No. 34).

Ackerman and Snitker argued that the plaintiff should withdraw the subpoenas to the nine recipients who now are defendants. Id. at 4–5. They asserted that discovery from parties should be obtained via a Rule 34 request for production, not a Rule 45 subpoena. Id. at 5 (collecting cases). They argued that the plaintiff must wait until after a Rule 26(f) conference (one that includes the newly added defendants) to obtain discovery from these parties. Id. at 6. And they contended that the plaintiff violated the court's order by serving more subpoenas after the court had stayed briefing deadlines on July 28, 2025. Id.

Ackerman and Snitker argued that the subpoenas fail to identify with sufficient particularity the documents requested. Id. They argued that the

8

subpoenas request blanket categories of documents such as "all communications" between the subpoenaed party and the defendants. Id. They asserted that the existence of a protective order designating documents as confidential does not eliminate the harm they would suffer from having financial information disclosed. Id. at 6–7.

Ackerman and Snitker next argued that they have standing to object to the subpoenas because they have a legitimate privacy interest in the financial records sought. Id. at 7–8. They asserted that multiple subpoenaed parties objected to the subpoenas, even if they did not file a motion for a protective order. Id. at 8–9. Ackerman and Snitker argued that the plaintiff failed to comply with the notice requirements of Federal Rule of Civil Procedure 45(a)(4). Id. at 9. They contended that the plaintiff possibly served—or intended to serve—the subpoenas less than one day after notifying the defendants of the subpoenas. Id. They asserted that more than one day's notice is required to comply with Rule 45. Id.

Ackerman and Snitker argued that there is no basis for lifting the discovery stay and that the request is outside the scope of this motion. Id. at 10. They argued that the joining of sixteen new defendants necessarily delayed the proceedings and that the stay of discovery should continue until the pleadings are closed. Id. at 11. According to Ackerman and Snitker, the plaintiff requested a meet-and-confer regarding a motion to set a status conference in Case No. 25-cv-985, then filed it the next day without waiting for a response. Id. at 12. They asserted that the plaintiff is imposing a double standard, because it engaged in the same conduct in which it accuses them of engaging. Id. Ackerman and Snitker argued that they needed to quickly file their motion for a protective order because they were not sure when the third-

9

party subpoenas had been served. <u>Id.</u> at 13. They asserted that at least one court has held that a motion to quash must be filed within fourteen days of service, and they did not want to risk their motion being denied as untimely. <u>Id.</u>

In its sur-reply, the plaintiff addressed Ackerman's and Snitker's notice argument. Dkt. No. 108. It argued there is no defined requirement for how much notice a party serving a subpoena must give to other parties. <u>Id.</u> at 1–2. The plaintiff contended that Ackerman and Snitker received the subpoenas and cover letters the same day they were issued and were notified prior to service. <u>Id.</u> at 2. The plaintiff argued that the purpose of the notice rule is to give the opposing party time to object to the subpoenas; they asserted that Ackerman's and Snitker's motion for a protective order constitutes their objection to the subpoenas. <u>Id.</u>

B.    <u>Legal Standard</u>

Ackerman and Snitker bring their motion under Federal Rules of Civil Procedure 26(c) and 45. Rule 26(c) states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Further,

> [o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> > (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery" obtained via subpoena. <u>Noble</u>

10

<u>Roman's, Inc. v. Hattenhauer Distrib. Co.</u>, 314 F.R.D. 304, 307 (S.D. Ind. 2016).

Rule 45 states that upon timely motion, the court must quash or modify a subpoena if it "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). "Generally, it is the person to whom a subpoena is directed who has standing to seek a motion to quash." <u>Hunt Int'l Resources Corp. v. Binstein</u>, 98 F.R.D. 689, 690 (N.D. Ill. July 28, 1983). But "a party has standing to move to quash a non-party subpoena if it 'infringes upon the movant's legitimate interests.'" <u>Architectural Iron Workers' Loc. No. 63 Welfare Fund. v. Legna Installers Inc.</u>, Case No. 22-C-5757, 2023 WL 2974083, at *2 (N.D. Ill. Apr. 17, 2023) (quoting <u>United States v. Raineri</u>, 670 F.2d 702, 712 (7th Cir. 1982)). "Examples of legitimate interests include asserting work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party." <u>Id.</u> (citing <u>Parker v. Four Seasons Hotels, Ltd.</u>, 291 F.R.D. 181, 187 (N.D. Ill. 2013)).

C.     <u>Analysis</u>

The plaintiff argues that Ackerman and Snitker lack standing to quash the third-party subpoenas. Ackerman and Snitker, as non-parties to the subpoenas, do not have standing to ask the court to quash the subpoenas on relevance, burden or proportionality grounds. <u>See</u> <u>Parker</u>, 291 F.R.D. at 187 ("Relevance, burden or service objections fall to the subpoena's recipient to make[.]"). But they *do* have standing to move for a protective order under Rule

11

26 to limit the discovery sought from a third party when the requested discovery exceeds the bounds of Rule 26. <u>See</u>, <u>e.g.</u>, <u>Noble Roman's</u>, 314 F.R.D. at 307–08. And the court may limit the frequency or extent of discovery on its own. <u>See</u> Fed. R. Civ. P. 26(b)(2)(C). The court will not assess whether the subpoenas infringe on Ackerman's and Snitker's interests under Rule 45 because there are grounds for issuing a protective order under Rule 26(c).

The plaintiff also argues that the court should deny the motion because Ackerman and Snitker did not make a good faith effort to meet and confer prior to filing the motion. The federal and local rules require that a party seeking a protective order must include a certification that he "has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1); <u>see also</u> Civil L.R. 37 (E.D. Wis.). Ackerman and Snitker stated in their certification that they were unable to meet and confer "due to scheduling conflicts." Dkt. No. 26 at 6. Ackerman and Snitker sent two emails to the plaintiff within twenty-four hours of filing this motion for a protective order; two messages sent twenty-four hours before the motion was filed do not reflect a sincere effort to resolve the discovery dispute. But given the legitimate issues raised in the motion, the court will not deny Ackerman's and Snitker's motion solely due to their half-hearted effort to meet and confer. <u>See</u> <u>Design Basics LLC v. Campbellsport Bldg. Supply, Inc.</u>, No. 13-C-560, 2014 WL 5818756, at *1 (E.D. Wis. Nov. 10, 2014) (considering merits of motion for protective order despite failure to adequately meet and confer).

As to the last of the threshold issues, the court finds that the plaintiff did not violate Rule 45's notice requirement. Rule 45 requires only that "a notice and a copy of the subpoena must be served on each party" before it is served

12

on the recipient. Fed. R. Civ. P. 45(a)(4). At least one court has held that notice sent on the same day as service of the subpoenas technically is sufficient (although a dubious practice). See Architectural Iron Workers', 2023 WL 2974083, at *3 ("[W]ith only hours' notice before the subpoenas hit the mail, Defendants did not have sufficient time by which to object and seek to resolve any dispute over the requests in the subpoena. Nevertheless, Rule 45 does not specific [sic] how much notice is required."). By providing notice on the same day or the day before the subpoenas were served, the plaintiff complied with Rule 45's requirements.

Turning to the contents of the subpoenas, the court first will address the nine subpoenas sent to recipients who now are parties to the case. As both parties acknowledge, courts in this circuit have held that a party cannot obtain information from another party to the case via a Rule 45 subpoena. Malhorta v. CVS Health, Inc., Case No. 24 CV 4769, 2025 WL 3269573, at *2 (N.D. Ill. Jan. 7, 2025) (quoting Rustom v. Rustom, Case No. 17 C 9061, 2018 WL 3105926 (N.D. Ill. June 25, 2018)) ("[A] discovery request under Fed. R. Civ. P. 34 is the appropriate way to get documents from an opponent, not a subpoena. . . ."); Smith v. Pendergrass, Case No. 02-CV-125, 2003 WL 21919182, at *3 (N.D. Ind. June 17, 2003) (declining to issue Rule 45 subpoenas to parties to the case because the plaintiff "should properly obtain such discovery through Rule 34 document requests"). Under Rule 26, the court may limit discovery sought by subpoena if the requesting party can obtain the information through the normal discovery process. Little v. JB Pritzker for Governor, Case No. 18 C 6954, 2020 WL 1939358, at *2 (N.D. Ill. Apr. 22, 2020) (citing Earthy, LLC v. BB&HC, LLC, Case No. 16 C 4934, 2017 WL 4512761, at *3 (N.D. Ill. Oct. 10, 2017)). The plaintiff now can obtain documents from nine of the subpoena

recipients through the normal discovery process, so the court will grant the defendants' motion for protective order as to the subpoenas to all recipients who now are parties, including Engineered Software Products, Verde Power Sales, JST Power Equipment, Commercial Energy Services & Supply, WESA Automation, MKD Electric, Metco Metal Fab, Jonathan Wear and International Motor Controls.

The remaining subpoena recipients fall into two categories: Ackerman's and Snitker's customers who are not parties to the case (HV Sales Co.; Reynolds Company; Mitsubishi Electric Power Products, Inc.) and Ackerman's and Snitker's banks or accounting firms (First Horizon Bank; Cartmell, Pastermak & Associates, P.C.; Amelse & Edmonds CPAs, Inc.; Frost Bank). Ackerman and Snitker have not specified the requests to which they object, but a review of the subpoena requests demonstrates they are overbroad. For example, the subpoena to HV Sales demands all communications to and from Gridcrest, Ackerman and Snitker; all contracts or agreements between HV Sales and Gridcrest, Ackerman and Snitker; files related to projects or transactions with Gridcrest; and financial transactions between HV Sales and Gridcrest, Ackerman and Snitker. Dkt. No. 26-1 at 74–88. The plaintiff makes these same demands of the Reynolds Company and Mitsubishi Electric Power Products. Id. at 183–99, 151–66. The plaintiff can, and should, obtain all these documents from Gridcrest, Ackerman and Snitker via a request for production, rather than burdening a third party with producing them. PrimeSource Buildings Prods., Inc. v. Felten, Case No. 16 CV 11468, 2018 WL 10425599, at *3 (N.D. Ill. Apr. 27, 2018) (granting motion for protective order where the requesting party failed to show it could not obtain the requested documents from parties to the case); Countryman v. Cmty. Link Fed. Credit Union, Case

14

No. 11-CV-136, 2012 WL 1143572, at *5 (N.D. Ind. Apr. 3, 2012) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents." (citations omitted)); A&R Sec. Serv. Inc. v. Serv. Emp. Int'l Union Loc. 1, Case No. 06 C 2446, 2006 WL 8460631, at *3 (N.D. Ill. July 28, 2006) ("Until it is apparent that A&R cannot fully respond to Local 1's document requests (at least those appropriate in scope), there simply is no need to burden non-parties to this litigation with the expense of responding to a subpoena when the same information is available from a party.").

The plaintiff argues it is "entitled to verify the accuracy of Defendants' representations through independent sources." Not so. Rule 26(c) expressly states that the court can limit duplicative discovery. The court will not allow the plaintiff to cross-check Ackerman's and Snitker's production with third parties solely for the purpose of "verifying" that Ackerman and Snitker have produced all the documents the plaintiff wants. This argument is especially unconvincing given that the plaintiff served these subpoenas weeks before requesting documents from Ackerman and Snitker. There is no evidence that Ackerman or Snitker spoliated evidence or made an incomplete production. The plaintiff did not give them a chance to produce *anything* before claiming that it needed to check Ackerman's and Snitker's honesty.

The only documents the plaintiff requests from Ackerman's and Snitker's customers that are not within Ackerman's and Snitker's control are "internal communications" and "internal documents" related to Ackerman, Snitker and Gridcrest. Again, the plaintiff has not explained how these documents are relevant, other than stating its unsupported theory that Ackerman and Snitker are hiding evidence of their alleged dishonesty. Because the plaintiff has not

demonstrated that internal communications or documents about Ackerman and Snitker are relevant to the claims in the case, the court will grant Ackerman's and Snitker's motion for protective order as to the subpoenas to HV Sales Co., the Reynolds Company and Mitsubishi Electric Power Products, Inc.

This leaves the subpoenas to Ackerman's and Snitker's banks and accounting firms. These subpoenas suffer from the same defects as the others. The subpoenas request communications to and from Ackerman and Snitker, bank statements for Ackerman's and Snitker's accounts, records of checks issued or deposited by Ackerman and Snitker and tax documents related to Ackerman and Snitker. See Dkt. No. 26-1 at 1–14, 46–73, 230–43. To the extent that these documents are relevant or within the scope of discovery, the plaintiff has not explained why it could not obtain them from Ackerman and Snitker directly. At the very least, the plaintiff should have *tried* to obtain them from Ackerman and Snitker before seeking third-party discovery. The court will grant Ackerman's and Snitker's motion for protective order as to the subpoenas to First Horizon Bank, Cartmell, Pastermak & Associates, P.C., Amelse & Edmonds CPAs, Inc. and Frost Bank.

The court will address a few lingering matters from the briefs. Ackerman and Snitker argue the plaintiff violated the court's order staying discovery by serving more subpoenas after the court stayed all briefing deadlines on July 28, 2025. Although the court stated at the status conference that had it intended its order to stay discovery as well as briefing, the court acknowledges that it did not state this explicitly in its order. Because discovery is not automatically stayed during the pendency of a motion to dismiss, see SK Hand Tool Corp. v. Dresser Indus., Inc., 852 F.2d 936, 945 n.11 (7th Cir. 1988), the

16

plaintiff had a reasonable basis to believe that staying the briefing deadlines did not necessarily stay discovery. It appears that the plaintiff has complied with the discovery stay since the court explicitly imposed one on August 25, 2025. The court will not impose sanctions on the plaintiff for serving discovery between July 28, 2025 and August 25, 2025.

Nor will the court lift the stay on discovery. District courts have broad discretion to control discovery. Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002). The court can use that discretion "to ensure that technically proper discovery does not impose oppression or undue burden or expense." Nexstar Broad., Inc. v. Granite Broad. Corp., Case No. 11-CV-249, 2011 WL 4345432, at *2 (N.D. Ind. Sept. 15, 2011) (citing Nixon v. Haag, Case No. 08–cv-00648, 2009 WL 2026343, at *2 (S.D. Ind. July 7, 2009)). The Seventh Circuit has held that a stay of discovery pending the resolution of pleading issues is especially appropriate in complex cases where discovery is "likely to be more than usually costly." See Limestone Dev. Corp. v. Vill. of Lemont, Ill., 520 F.3d 797, 803–04 (7th Cir. 2008). The second amended complaint raises forty claims against twenty-one defendants, including allegations of widespread conspiracies among varying combinations of defendants. If all these claims went forward, discovery would likely be more extensive and costly than the average case. There is no question that some defendants will file challenges to the complaint, see dkt. no. 96, so the court will continue the stay on discovery until all challenges to the pleadings have been resolved.

### III. Defendants' Motion for Leave to File Motion for More Definite Statement (Dkt. No. 99)

On November 18, 2025, the court set a deadline for all the defendants to file an answer or responsive pleading and ordered that "any defendant seeking

to file a motion to dismiss must confer with the other defendants in order to determine whether a joint motion can be filed." Dkt. No. 96.

On November 25, 2025, all defendants but Freightbase filed a Rule 7(h) expedited, non-dispositive motion seeking leave "to file a single, consolidated motion for a more definite statement." Dkt. No. 99 at 1. The defendants state that during a meet-and-confer on November 20, 2025, they agreed that a motion for more definite statement would be the proper first step to clear up the claims and allegations and either obviate the need for subsequent motion practice or allow those motions to be "precise, shorter, and non-duplicative." Id. at 2. The defendants state that they intend to file a motion to dismiss for failure to state a claim or for lack of personal jurisdiction, depending on the outcome of the joint motion, and they seek to preserve their right to raise these defenses. Id. at 3. The defendants assert that the motion for a more definite statement will seek to have the plaintiff clarify the defendants against whom each claim is asserted, the specific factual allegations supporting each element as to each defendant and the relevant time frame, as well as "organization of the pleading by party and claim." Id.

The plaintiff responds that filing a standalone motion for a more definite statement would preclude the defendants from raising any defense listed in Federal Rules of Civil Procedure 12(b)(2) through (5), including lack of personal jurisdiction. Dkt. No. 100 at 2–3. It argues that even if the Federal Rules permitted it, allowing the defendants to file a preliminary motion followed by another Rule 12(b) motion would be inefficient. Id. The plaintiff asserts that the defendants have not identified a legitimate reason to file a motion for more definite statement. Id. at 3–4. It contends that the second amended complaint already includes party-specific sections and is organized chronologically. Id. at

4. It also states that each count clearly identifies the party against whom that count is brought. Id. The plaintiff argues that it is not obliged to organize the complaint in the way the defendants prefer so long as the complaint gives the defendants fair notice of the plaintiff's claims. Id.

The court understands why the defendants want the plaintiff to streamline the second amended complaint. The plaintiff represented to the court at the August 22, 2025 status conference that if the court were to consolidate the two cases, it wished to file a "global amended complaint" against five defendants: Ackerman, Snitker, DeeCee, Sarah and Gridcrest. See Dkt. No. 34. The second amended complaint consists of 1,027 paragraphs that bring forty claims against twenty-one defendants: (1) breach of contract against Snitker; (2) breach of contract against Ackerman; (3) breach of fiduciary duty against Ackerman and Snitker's; (4) aiding and abetting Ackerman's breach of fiduciary duty against Snitker and Gridcrest; (5) aiding and abetting Snitker's breach of fiduciary duty against Ackerman and Gridcrest; (6) civil theft against Ackerman, Snitker and Gridcrest; (7) conversion/dispossession against Ackerman, Snitker and Gridcrest; (8) fraud/intentional misrepresentation against Ackerman and Snitker; (9) civil conspiracy against Ackerman, Snitker and Gridcrest; (10) aiding and abetting the violations in Counts 3, 6 and 7 against Sarah and DeeCee; (11) tortious interference with Ackerman's and Snitker's contracts against Sarah, DeeCee and Gridcrest; (12) unjust enrichment against Sarah, DeeCee and Gridcrest; (13) aiding and abetting the violations in Counts 3, 6 and 7 against JST Power Equipment and Jonathan Wear; (14) civil conspiracy against JST Power Equipment, Jonathan Wear, Ackerman, Snitker and Gridcrest; (15) unjust enrichment against JST Power Equipment; (16) aiding and abetting the violations in Counts 3, 6 and 7 against

19

Engineered Software Products, Inc., ElectriCON USA, LLC and Sean Patenaude; (17) civil conspiracy against Engineered Software Products, ElectriCON, Sean Patenaude, Ackerman, Snitker and Gridcrest; (18) unjust enrichment against Engineered Software Products and ElectriCON; (19) civil theft against Engineered Software Products and Sean Patenaude; (20) conversion/dispossession against Engineered Software Products and Sean Patenaude; (21) breach of contract against Verde Power Sales LLC; (22) aiding and abetting the violations in Counts 3, 6 and 7 against Verde Power Sales, MK Perimeter Protection, LLC and Toby Arney; (23) civil conspiracy against Verde Power Sales, MK Perimeter Protection, Toby Arney, Ackerman, Snitker and Gridcrest; (24) intentional misrepresentation against Verde Power Sales; (25) strict responsibility misrepresentation against Verde Power Sales; (26) negligent misrepresentation against Verde Power Sales; (27) aiding and abetting the violations in Counts 3, 6 and 7 against Commercial Energy Services & Supply, LLC and Oscar Aliaga; (28) civil conspiracy against Commercial Energy Services & Supply, Oscar Aliaga, Ackerman, Snitker and Gridcrest; (29) civil conspiracy to convert against Commercial Energy Services & Supply, Oscar Aliaga, Verde Power Sales, MK Perimeter Protection, Toby Arney, Ackerman, Snitker and Gridcrest; (30) civil conspiracy against Commercial Energy Services & Supply, Oscar Aliaga, Verde Power Sales MK Perimeter Protection, Toby Arney, JST Power Equipment, Jonathan Wear, Ackerman, Snitker and Gridcrest; (31) civil conspiracy against Commercial Energy Services & Supply, Oscar Aliaga, Verde Power Sales, MK Perimeter Protection, Toby Arney, Engineered Software Products, ElectriCON, Sean Patenaude, Ackerman, Snitker and Gridcrest; (32) aiding and abetting the violations in Counts 3, 6 and 7 against WESA Automation and MKD Electric, LLC; (33) civil conspiracy

20

against WESA Automation, MKD Electric, Commercial Energy Services & Supply, Oscar Aliaga, Verde Power Sales, Toby Arney, JST Power Equipment, Jonathan Wear, Ackerman, Snitker and Gridcrest; (34) unjust enrichment against WESA Automation and MKD Electric; (35) aiding and abetting the violations in Counts 3, 6 and 7 against METCO Metal Fab, LLC; (36) unjust enrichment against METCO Metal Fab; (37) aiding and abetting the violations in Counts 3, 6 and 7 against International Motor Controls, Inc. and Robert Charles Claypool III; (38) unjust enrichment against International Motor Controls and Robert Charles Claypool III; (39) aiding and abetting the violations in Counts 3, 6 and 7 against Freightbase, LLC; and (40) unjust enrichment against Freightbase.

At the August 25, 2025 hearing, the plaintiff gave no indication that it intended to balloon this case from a relatively straightforward restrictive covenant case into an industry-wide corporate conspiracy case. The plaintiff has demonstrated a pattern of engaging in needlessly duplicative litigation— first by filing a separate lawsuit against Ackerman's and Snitker's spouses, now by suing its own customers—possibly to increase litigation costs or settlement pressure on Ackerman and Snitker. Most, if not all, of the forty claims in this case hinge on the court finding that Ackerman and Snitker breached their restrictive covenants or fiduciary duties to the plaintiff. Nineteen counts explicitly require a finding that Ackerman and Snitker breached or name only Ackerman, Snitker and Gridcrest; the nine civil conspiracy claims naming Ackerman, Snitker and Gridcrest and various combinations of the other defendants also require some finding of wrongdoing on the part of Ackerman, Snitker and Gridcrest. To varying degrees, the other twelve claims also relate to actions taken by Ackerman, Snitker and Gridcrest to enable the

21

other defendants' conduct. If the complaint fails to state a claim against Ackerman, Snitker and Gridcrest, many of the claims may be dismissed.

It is an understatement to say that in dramatically inflating the scope of this litigation, without warning, the plaintiff has not made a good impression. The court can imagine the impact the plaintiff's actions are having on the newly added defendants. But the court does not believe that the defendants' proposed course of action will streamline the litigation. Again, the second amended complaint already is extremely lengthy. It contains detailed factual allegations about the defendants. Each count identifies the defendants against whom that count is brought. The court cannot discern how requiring the plaintiff to provide *more* detail will make it easier for the defendants to respond to what already is a bloated complaint.

Instead, the court will require the parties to appear for a telephonic status conference to discuss possible approaches that might allow this case to proceed through the pleading stage without needlessly duplicative motion practice. The parties should be prepared to discuss whether the plaintiff could address the alleged deficiencies in most, if not all, claims should Ackerman, Snitker and Gridcrest file a joint motion to dismiss for failure to state a claim. If so, the court will consider setting a deadline for Ackerman, Snitker and Gridcrest to file a joint motion to dismiss and staying the responsive pleading deadline for the remaining defendants pending the outcome of that single motion.

## IV.  Conclusion

The court **DENIES AS MOOT** the plaintiff's motion to strike the defendants' reply brief in support of the motion for protective order. Dkt. No. 97.

22

The court **GRANTS** defendants David Ackerman's and Paul Snitker's motion for protective order. Dkt. No. 26.

All discovery remains **STAYED**. The court will not reopen discovery until all challenges to the second amended complaint have been resolved, all defendants have answered the complaint and all parties have appeared for a Rule 16 scheduling conference. Any party who seeks discovery prior to the court's order lifting the stay will be subject to sanctions.

The court **DENIES** the defendants' motion for leave to file a motion for a more definite statement. Dkt. No. 99.

The court **ORDERS** that all parties must appear for a telephonic status conference on **June 22, 2026 at 3:00 PM (Central Time)**. The parties are to appear by calling the court's conference line at 551-285-1373 and entering Meeting ID 161 4901 8989 and Passcode 190021 when prompted. The parties should be prepared to present a plan for the efficient and orderly completion of the pleading stage of this case. The court will set any necessary deadlines for responsive pleadings or pre-answer motions at the status conference.

Dated in Milwaukee, Wisconsin this 22nd day of May, 2026.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge